Good morning, Your Honor. Good morning, Counsel. Mark Willimon for Mr. Velazquez-Sanchez, appellant in this matter. The three conclusory answers to the issues presented is the government must give an additional point when there are no further trial issues pending. Do you explain how that, your statement, conforms with the Wade case? I'm sorry, sir? Explain how what you just said is in conformity with the Supreme Court's unanimous decision in the United States against Wade. I think the Wade decision, Your Honor, in what I understand of it and how I interpret it, is that the government has great deference. But the Wade decision was — The Supreme Court says, let me quote it to you, the government has a power, not a duty. Yes, Your Honor. But that power has to be tempered with the confines that the Congress gives it. The government can't just — Well, there's no duty. It has a power. Yes, sir. What does it have to be combined with? Well, the bottom line is, of course, the government can't just throw dice and decide that I have the power to throw the dice. But if the dice comes up at a completely different number, then I can do whatever I want. At this particular situation, Judge, Congress tells the government that if there are no further trial issues under 3E1.1 and that the defendant admitted his crime in a quick manner, then they're to give him the extra point. It doesn't say that. And the Supreme Court doesn't say that. I understand that the Court's — It said, and the Supreme Court did not say what you say it said. The statute — It's a unanimous Supreme Court. I understand, Your Honor. Nobody in that whole body thought there was something — only if they said we're doing it because he's an African American or because we hate his religion. Something really unconstitutional. Yes, that would be bad. Then at this point, then, why bother putting any constraints on the government? If the government doesn't have to conform with the intent and the comment found under 3.8 — Discretionary power has been lodged on the U.S. attorney. Yes. But if the discretionary power is for anything they want, then why bother putting it in 3. — in 3.E — 3E1.1, Judge? Why don't they give it to — just put it under another value? This particular statute was designed to give the government authority. If the government can find that the defendant accepted responsibility quickly and they didn't have to prepare for trial, they're to give one point. If there is no judicial oversight over that one point, then — then — then they've got unfettered testimony. If they do something unconstitutional. I understand, Judge. It's not unconstitutional. So under Wade, Judge, I would ask the Court to consider the commentary under 6, under 3E1.1. It's for trial issues, not sentencing issues, Judge. That's all I can tell you. As far as the other — Does it — does this — in the end, does this make any difference, though? In the end — The way the — the way the district court judge calculated this, though. Well, Your Honor, that's the problem. The way that the calculations done by the government, had the government — had the court given my client the minimum role, which is the second issue, instead of starting at 36 and going to 38 because of the purity of the methamphetamines, basically he would have started at 34. He would have gotten two levels off for minor role. He would have gotten three levels off — or two levels off for safety valve. He would have gotten two levels off for acceptance of responsibility. And he would have gotten the additional level off because he didn't take this matter to trial, and he — and he admitted to this matter quickly. So that would have put him at level 25, which would have been a 57 to 71. Given the fact that the judge gave him the bottom end of the range, 70 to 80, if the government — if the — if the court were so disposed, he would have gotten the bottom end, so he was looking at saving two years off of his life. So I'm asking the court, yes, at the bottom end, my client deserves about a 57 to 71 chance, not a 70 to 80 chance. Well, apparently the government didn't do it in this case because he didn't sign a plea agreement and waive his rights of appeal. Right. So, I mean, that's a perfectly rational reason. You know, Judge, the — the statute, again, talks about trial. My client — my client does not preserve any of his trial issues. The only thing he preserves for appeal is the sentencing. And I think there's a far — there's a — there's a Chinese wall between trial issues and sentencing issues. 3E1.1 talks about trial, and my client waives all trial issues when he pleads directly to the court without any reservation. The only question is, as far as his right to appeal, it's the sentencing matter, and that has to be done reasonably. As far as the last issue, Judge, is concerned, is the — the findings of the court that — that basically they reiterate the statute under 2D1.1. Basically, my client is a minor role. All he did was get paid a few hundred bucks or, I guess, $1,000 to take a vehicle that he didn't know across the border. He did nothing more. He didn't pack it. He didn't do anything to it. And, again, he's a mechanical — mechanical mule. As I understand what Judge Sobata did, it's to say, well, I'm going to give him the usual sentence I give minor offenders. We have a lot of these mules. We give them about 70 months. I'm going to depart from the — from the guidelines and give them a break. Agreed, but I think what happens in 3553, Your Honor, is that you first have to understand and properly calculate the guideline — the guideline sentencing range before you can determine that. I'm saying that he should have been one level below. He should have been the 57 to 71 and then made his — made his findings under 3553. Do you think he would have — he would have given him the same degree of variance if he had done that? Oh, absolutely. Absolutely. Because the variance — I think we realize my client's very sympathetic. He was very remorseful. He cries all the time. I think he was a very sympathetic issue. And that's why Judge Sobata — The judge wants it all that. Sure he does. And he says, I'm going to give it about what I do with other mules. Yes, Your Honor. But the reason why he did that is he gave him the bottom of the range. He even mentions that in the record. It's in the ER. He gives him the bottom of the record because he believed the record was that, 70 to 80. I'm saying that if he had known and given all the variances as legally supported by the — by the sentencing guidelines, he would have gotten to a point where he would have been 57 to 71, not 70 to 80. So, yes, in the scheme of things, Your Honor, 13 months. It's one year of his life. The guidelines are not binding. I'm sorry? You know, the guidelines are not binding. They're binding. Of course not. But they have to be correctly — they have to be correctly calculated, do they not? Yes. Before a judge can make a 3-5-5 determination, he has to go through a proper calculation. And that's what needs to happen. And it wasn't happened here. The last thing I asked the Court to do is that — I asked the Court to look at Rodriguez-Lara in light of the Espinoza-Cano. I think there we have completely different ends, and it's very confusing for us practitioners. I would ask the Court to consider trial issues and sentencing issues when determining that. I reserve the rest of my time. Thank you, gentlemen. Thank you. Good morning, Your Honor. May it please the Court. Elizabeth Berenger, Assistant U.S. Attorney on behalf of the United States. The district court — any error in calculating the guidelines was harmless because the defendant wasn't prejudiced. Just as Judge Paez noted, it didn't really make a difference about the guideline calculations. Do you mind speaking into the microphone? I apologize, Your Honor. I think this microphone's not working very well, and I'm a little too tall for it. This room — the acoustics in this room just aren't — Terrible. Speak loudly into the microphone. I will do my best. Under the district court's Booker authority, the defendant received the same sentence he asked for here. Again, the range for the guidelines was 188 to 235 months. Are you able to hear me? Or not able to hear me. I'm sorry. I'm trying to bend over. And then the Court gave him a nine-level variance, which incorporated the minor role reductions. If the Court looks in the record, what the variance encompassed was the PSR reasons in paragraph 55, which was the minor role reduction, which gives him a 38 base level, less two for safety valve, less three for acceptance, four adjustment under 2D1.1, less two for minor role, which equals an offense level 27, which gives a range of 70 to 87 months. So the defendant received the same sentence he would have if he'd received a minor role. There's harmless error. The Court considered all the 3553A factors, and there's no evidence in the record the Court would give any other sentence, even if this case was remanded back, much like Meriwether. Well, why are you arguing harmless error? I thought this was an unpreserved error. Am I mistaken about that? Did the defendant make this objection about a minor role reduction at sentencing? The defendant did raise minor role, but he didn't raise the acceptance of responsibility or the purity of the methamphetamine. But at sentencing, he raised the minor role, okay. Yes, he did. There is evidence in the record that he raised the minor role. Okay. Second, there was no clear error in calculating the guidelines. Just as Judge Noonan noted, 3E1.1 gives prosecutors the power and not the duty to file the motion. I hope the Court received the 28J letter that we filed in this case about Espinoza-Cano. Did the Court receive that? So there was no plain error on that point. The Court did not clear the motion. Let me go, but it is — I'm sensitive to what Judge Noonan was saying about Wade. But, you know, the — in this case, it may not make any difference. But as I understood what happened, the prosecution, the government, took the position that because he didn't sign a plea agreement, they wouldn't move to the extra point. That is correct, Your Honor. And as — The plea agreement would have contained a waiver of his right to appeal. Yes. And when pressed by the judge, the response was, well, that's just my policy, or that's what I understand the office's policy to be. Yes. It just seems kind of arbitrary. It's not arbitrary. It's a legitimate and rational reason. The guideline is geared towards, you know, preventing — allowing the government to avoid the expense and time and effort of conducting a trial. If I could — Going through the hassle of a trial, not everything else that's attendant to a trial. Actually, I would respectfully disagree. On page 25 and 26 of the government's brief, there's also other language in 3E1.1 permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. Isn't it all related to the trial? No, Your Honor. I mean, according to Espinoza-Cano, there wouldn't be plain error in this case. It says avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, just as this court found in Espinoza-Cano. And also in 3E1.1, the defendant meriting a third point would have accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner. That phrase, just punishment, connotes in the sentencing context that the actual — what he's going to be punished to. He stands up there in front of the court and just pleads guilty straight up to the complaint. Isn't that — you know, he's accepted. He's certain that he's going to be sentenced and whatnot. Well, Your Honor, just, I mean, according to this court in Espinoza-Cano, held that the government's — it's a legitimate and rational reason, and part of the incentive — There was a bench trial in that case. The bench trial is on stipulated facts or something? Right, but the language in that case just discusses — it adopts the weight and the cases in the 5K context and also notes that the plea process. I could actually give you an exact site if you'd like it. In 456 Federal 3rd, 1136, it says — oh, excuse me, it's on. In 1138, it just has comments about there are rational reasons for the government to prefer an outright guilty plea to a stipulated bench trial. In particular — Well, you've got an outright guilty plea here. Right, right. As the government urges, a plea of guilty allows the government to avoid expending resources anticipating and ultimately defending a complete — Well, you've got here. Right. As noted in Wade, the government's decision not to move may be based simply on the rational assessments of the cost and benefit that would flow from moving. And in this case, the prosecutor determined that an irrational assessment of the cost and benefits that the defendant had not entered into a plea agreement and therefore could collaterally attack or direct appeal the judgment and sentence. And so it's just part of the plea incentive. Well, I guess Judge Sabata had some concerns about whether it was proper. Right. He expressed some reservations on this, and it looks like he just backdoored it when he got to the 3553A factors. It's appeared that's what he did. Well, you know, the government won't do it, so I'll do it under 3553A. That's correct. The court did still give him that additional level for acceptance of responsibility, so the defendant cannot show any prejudice. Wow. So if the court doesn't have any further questions, I would just ask that you affirm the judgment and sentence. Thank you. One of the things I noted when Ms. Berenger was speaking is she started at level 38. Therein lies — was one of the issues. I believe that the court shouldn't have started at 38. They should have started at 36 because the purity was never admitted to at the change of plea. As a matter of fact, purity was never known until sometimes later. At the point, under Ameline Booker, as this Court is well aware, the fact that it went from level 36 for any methamphetamines to pure methamphetamines is a two-level bump. Again, that's two more levels that the judge did not or considered in sentencing my client 70 to 80 months, which he would have started at 36. So, again, as the calculations go, my client would have been in category or level 24, which would have been 57 to 71. Given my client's demeanor and apologetic nature, he should have gotten 57 months. Can I ask you one thing about the minor role? Sure, Judge. What do you understand? You know, the probation report said the facts are just — just the record just doesn't show a basis for a minor role reduction under the guideline. Your Honor, in that particular case — But what was — but yet, nonetheless, when it got to the 3553A, they said, well, he's just a courier. Right. And we think that the Court ought to, under 3553A, exercise some discretion and take that into account. I think what happened — What was unique about the circumstance of this case that it didn't qualify under the guideline? Well, I think what happens, Your Honor, is that the probation officer made the recommendation prior to the sentencing hearing. What there was is that after the probation department wrote their report, we actually had a hearing. My client went under oath. He actually testified in front of Judge Zapata and presented evidence which was not reflected in the report. So what happens is Judge Zapata was able to look at my client, judge his demeanor, and basically saw for himself what his role was. And if you read Judge Zapata's words, you can't get any clearer to what his idea of what my client's role was. He's a first-time offender with no other connections to this. He was given a grand to drive a vehicle across the playground and drop it at Wal-Mart. That's it. Well, I didn't — maybe that was in the record. I'm not sure that I saw it. But Judge Zapata nonetheless felt that he didn't merit the role reduction under the guideline, but nonetheless, when he got to the — Right. But he — I mean, he repeated exactly what he did. He repeated the poster-child language exactly right there. So that's it. Thank you very much, Your Honors. It's been a pleasure. Thank you. The matter will be submitted.
judges: Canby, Cox, Paez